**FERRIS et al. v. SHANDY.**

No. 8875—Opinion Filed June 11, 1918.

Rehearing Denied Sept. 5, 1918.

(174 Pac. 1060.)

(Syllabus.)

**1. Master and Servant — Injury to Servant —Petition—Sufficiency.**

Petition examined and construed to allege that the acts of negligence set out and relied upon at the trial were the proximate cause of the accident from which plaintiff received his injuries.

**2. Same—Evidence—Sufficiency.**

Evidence examined, and held to reasonably support the verdict of the jury.

**3. Same—Burden of Proof.**

In an action by a servant for damages resulting from the negligence of the master, the plaintiff is required to establish negligence on the part of the defendant, and is further required to show that such negligence was the proximate cause of the injuries complained of.

**4. Negligence—Evidence—Similar Facts.**

Negligence may be established by direct evidence when this character of proof is obtainable, and it may also be established by proof of other facts and circumstances and the causal connection between the negligence alleged and the injuries received may be shown by proof of such facts as logically create the inference that the negligence proved contributed to the injury.

**5. Master and Servant—Injury to Employe —Liability of Railroad.**

It is the duty of a railroad company to make and keep its roadbed and tracks in a reasonably safe condition, and if it permits

same to become and remain out of repair, and as a result thereof an accident is caused, resulting in injury to an employe, the company will be liable.

**6. Damages—Personal Injuries—Excessive Verdict.**

Plaintiff was 25 years of age, was serving as fireman, and was earning $3.45 per day. The power of sight in his left eye was destroyed; that in his right eye diminished one-third. He was injured in his right groin. He suffered constantly, and was nervous and miserable all the time. His lower limbs were affected; he could not walk right; and his injuries were permanent. His expectancy, according to the American Mortality Table was 38.81 years. There is nothing in the record to indicate that the jury were influenced by passion or prejudice. Held, that a verdict for $18,750 was not excessive.

**7. Witnesses—Repetition of Questions.**

Where a question has been asked and answered without objection, it is not error to sustain an objection to practically the same question.

**8. Master and Servant—Injuries to Employe—Knowledge of Danger.**

General orders issued by a train dispatcher to the crew of a train that was derailed, calling attention to the condition of the track and road of a railroad company, and directing the rate of speed to be maintained over certain portions of the track, are admissible for the purpose of showing notice to and knowledge upon the part of defendant as to the condition of the track and roadbed at the time and place of the accident.

**9. Appeal and Error—Master and Servant —Duty to Inspect Appliances — Contributory Negligence—Assumption of Risk— Instructions.**

Instructions examined, and held to contain no prejudicial error.

Error from District Court, Hughes County: Geo. C. Crump, Judge.

Action by B. F. Shandy against H. C. Ferris and another. Judgment for plaintiff, and defendants bring error. Affirmed.

E. R. Jones and E. H. Foster, for plaintiffs in error.

Anglin & Hall and J. L. Skinner, for defendant in error.

HARDY, J. B. F. Shandy commenced an action in the district court of Hughes county against H. C. Ferris and Alexander New, as receivers of the Missouri, Oklahoma & Gulf Railway Company, to recover damages for personal injuries alleged to have been caused by the negligence of defendants. Defendants filed answer consisting of a gen-

eral denial and specifically pleaded contributory negligence and assumption of risk. Verdict and judgment were for plaintiff. and defendants prosecute error. The parties will be referred to as they appeared in the trial court.

The specific acts of negligence relied upon are: First, that the train was being propelled at an excessive rate of speed; second, that defendants' track and roadbed were defective and in bad state of repair at the place of the accident; and, third, that defendants were hauling in said train a car with a defective wheel.

Defendants contend that it is nowhere alleged in the petition that the negligence of the engineer in driving his engine at an excessive speed, or that the defective condition of the track, contributed in any wise to or caused the derailment which was the immediate and proximate cause of plaintiff's injuries. In this we think defendants are mistaken, as we construe the petition to allege that the negligence of defendants in the particulars stated was the proximate cause of the accident from which plaintiff received his injuries.

On the trial of the case plaintiff offered evidence to show the speed of the train and the condition of the track and roadbed at the time the train was derailed. It appears from plaintiff's evidence that the derailment occurred on a curve north of the Atwood station. The train at the time was running at a speed of from 30 to 45 miles per hour. At the place of the accident from one half to two-thirds of the cross-ties were old and rotten. The roadbed was considerably washed and there were no shoulders thereon at the place of the wreck. The track was not ballasted, and was in bad shape. Plaintiff testified that the tender was the first part of the train to leave the track, and that, believing his position to be perilous, he jumped from the moving train and fell across the rails on a side track, and suffered the injuries complained of; that the sight of his left eye is totally destroyed, and the power of vision in his right eye was impaired to the extent of one-third or more; and that he was otherwise injured.

Defendants contend that the evidence shows that the derailment was caused by the defective condition of a car wheel which it had recently purchased, and which had been inspected by it the day previous and which defect in the wheel was latent and hidden, and was not discovered by the inspection, and that therefore the claim of negligence has been disproven. It is true that plaintiff was bound to establish negligence upon the part of the defendant, and to go further

and prove such negligent acts were the proximate cause of the injuries received and it was not sufficient merely to allege and prove that defendants were negligent in one or more of the particulars alleged.

In actions between master and servant the fact of an accident carries with it no presumption of negligence on the part of the master, but negligence in such case is an affirmative fact which the injured employe is required to establish, and he was further required to establish that such negligence proximately caused the injuries complained of. The authorities in support of this rule are collected in Ponca City Ice Co. v. Robertson, 67 Okla. 81 169 Pac. 1111; St. L., I. M. & S. Ry. Co. v. McWhirter. 229 U. S. 265. 33 Sup. Ct. 858, 57 L. Ed. 1179. And this rule applies in actions governed by the Federal Employers' Liability Act. A., T. & S. F. R. Co. v. Swearingen, 239 U. S. 339, 36 Sup. Ct. 121, 60 L. Ed. 317.

Negligence may be established by direct evidence when this character of proof is obtainable, and it also may be established by proof of other facts and circumstances, and likewise the causal connection between the negligence alleged and the injuries received may be shown by proof of such facts as logically create the inference that the negligence proved contributed to the injury. Lusk et al. v. Phelps. and cases cited, 71 Oklahoma, 175 Pac. 371.

It is the duty of the railroad company to make and keep its tracks and roadbed in a reasonably safe condition; and, if it permits same to become and remain unsafe and out of repair, and as a result thereof an accident is caused, resulting in injury to an employe, the railroad company will be liable. K. C., F. Scott & Gulf R. R. Co. v. Kier. 41 Kan. 661, 671, 21 Pac. 770, 13 Am. St. Rep. 311; Kregg v. Atlanta & West Point R., 77 Ga. 202, 4 Am. St. Rep. 79; Taylor. Bastrop & Houston Ry. Co. v. Taylor, 79 Tex. 104, 14 S. W. 918, 23 Am. Rep. 316; Swadley v. Mo. Pac. Ry. Co. 118 Mo. 268, 24 S. W. 140, 40 Am. St. Rep. 366; Fuller v. Tremont Lumber Co., 114 La. Ann. 266, 38 South. 164, 108 Am. St. Rep. 348; Meloy v. C. & N. W. Ry. Co.. 77 Iowa, 743, 42 N. W. 563, 4 L. R. A. 287, 14 Am. St. Rep. 325.

The question whether the derailment was caused by the excessive speed of the train and the defective condition of the track and roadbed, or whether it was caused solely by the defective condition of the car wheel, was submitted to the jury. who found in favor of the contention of plaintiff. and there was plenty of evidence to sustain the verdict.

We cannot agree that the evidence conclusively establishes that the derailment was caused solely by the broken flange on the car wheel, but, on the contrary, approve the finding of the jury that the speed at which the train was running and the defective and unsafe condition of the track and roadbed at the place of the accident were contributing causes to the derailment, even if we assume that the broken car wheel contributed to the accident. The verdict was for $18 750, which amount defendants contend is excessive. The question whether plaintiff's injuries resulted from the accident was properly submitted to the jury, who found against defendants, and we, therefore, pass to the consideration of the claim that the amount awarded is excessive.

Plaintiff was 25 years of age was employed in the position of fireman; was working regularly, and earning $3.45 per day. The power of vision in his left eye was totally destroyed and in his right eye diminished one-third. He testified that he was injured in his right groin; that he suffered constantly, and was nervous and miserable all the time. Two physicians testified that he seemed nervous and was suffering from general traumatic conditions; that he did not walk right; that his lower limbs were affected, which condition, was caused by some kind of blow or jar and that he would not recover from the injuries from which he was suffering, but that said injuries might cause future trouble.

The rule for determining whether damages awarded are excessive is that they must be so large as to strike mankind at first blush as being beyond all measure unreasonable and outrageous, and such as manifestly show the jury to have been actuated by passion, partiality, prejudice, and corruption. In short the damages must be flagrantly outrageous and extravagant, for the court cannot draw the line, having no standard by which to ascertain the excess. C., R. I. & P. R. R. Co. v. De Vore, 43 Okla. 534, 143 Pac. 864. In the case cited plaintiff was an engineer 34 years of age; was receiving an average of from $125 to $130 per month. By reason of the injuries received his earning capacity was reduced to $65 per month, and he was disqualified from holding the position of engineer for any railroad company. The sight of one eye was entirely destroyed. He suffered considerable pain for 15 days, and was under the care of a physician for about 4 months. The verdict of $15,000 was held not excessive. In the case at bar, in addition to the loss of sight in one eye, plaintiff's power of vision was diminished one-third in the other, and he suffered other injuries, as above set out. He

was 25 years of age; had a life expectancy of 38.81 years, and was earning approximately $100 per month at the time of his injuries. Since his injury he had not earned anything to the time of trial, and by reason of his injuries was incligible to pursue his occupation as fireman. By the rule announced in the De Vore Case the damages awarded were not excessive.

During the examination of Dr. Echols, one of the two physicians who were appointed by the court to make an examination of plaintiff, defendant asked the following question:

"Q. You understand that he has a lawsuit here asking for a large sum of money for these injuries? A. Yes, sir. Q. Do you think that that had anything to do with his actions when you made that examination?"

Objection to this question was sustained, and exceptions reserved by defendants, whereupon the court instructed the jury not to consider any remarks of the court except when directed to them, and stated that it was the duty of the court to see that the parties have a fair and impartial trial, and also to give attorneys time to argue the case.

Error is predicated upon this ruling of the court, and it is contended that it was proper for the witness to answer the question propounded. The record shows that great latitude was allowed in the examination of this witness along this line, and that, immediately preceding the question objected to, practically the same question was asked and answered without objection, and there was no error in refusing to permit counsel to continue the examination along this line, for we agree with the trial court that at this point the examination had reached an argumentative stage.

General orders issued by the train dispatcher to the crew of the train that was derailed were admitted over objection and exception, and error is urged thereon. The derailment occurred near Atwood, which is a station between the stations of Dustin and Lula, on the line of railroad operated by defendants, and these orders directed all trains not to exceed 10 miles per hour on any unballasted track between Dustin and Denison, and directed them to run carefully between Dustin and Lula, looking out for soft spots, holes, and swings, and order No. A. 341 directed trains to reduce speed to 5 miles per hour around first curve north at Atwood. Defendants contend that this evidence was incompetent and inadmissible for any purpose, and that it is no proof of negligence. We think this evidence was admissible for the purpose of proving knowl-

edge, upon the part of defendants and the engineer operating the engine which was derailed, of the condition of the track at the time and place of the derailment. It was the contention of the defendants that the track was in good condition; had been ballasted and that the wreck was not caused by the defective condition of the roadbed and tracks. This evidence tended to show that defendants had notice and knowledge of the condition of the track and roadbed at the time and place of the injury, and that this information had been communicated to the engineer on the train which was derailed, and was admissible for this purpose.

The genuineness of the orders is not contested, and that they were given in the usual course of defendants' business is not denied. This being true, we see no reason why they were not competent, and should not have been admitted for the purpose of establishing notice to the defendants of the condition of the roadbed and tracks.

Instruction No. 2 is not erroneous on the ground of its being an abstract statement of a rule of law not applicable to the evidence, nor is it erroneous in that it defines the duty of defendants "to use ordinary care in making proper inspection and repairs of appliances as will protect the servants against dangers incident to their employment." This instruction did not make defendants insurers of plaintiff's safety and the jury were so told in another instruction, but only defined the measure of their duty to be the use of ordinary care in making proper inspections, and this is the true rule. Ponca City Ice Co. v. Robertson, supra.

Instruction No. 3, submitting the defense of assumption of risk, stated that:

"Defendant assumed all the risks which were ordinarily and naturally incident to the particular services in which he was employed, but he has a right to rely upon the implied promise of the master to do those things required of him, and plaintiff assumed the risk of such secret defects as cannot be discovered by ordinary observation and diligence on the part of defendants."

This instruction did not leave to the jury, as claimed, a roving commission to find out and determine the measure of duty owing by defendants, but must be construed in connection with other instructions wherein the duty of defendants was specifically stated (Chickasaw Compress Co. v. Bow, 47 Okla. 576, 149 Pac. 1166; Ponca City Ice Co. v. Robertson, supra), and was correct wherein it announced the rule that plaintiff had a right to rely upon the master's performance of his implied promise to do those things required of him. Neeley v. Southwestern Cotton Oil Co., 13 Okla. 356 75 Pac. 537, 64 L. R. A. 145; C., R. I. & P. Ry. Co. v. Wright, 39 Okla. 84, 134 Pac. 427.

Plaintiff was not charged with the duty of maintaining and inspecting the roadbed and tracks of defendants, and therefore did not assume the risks arising from defective condition thereby unless the defect was so patent and obvious that a reasonably prudent person would have known thereof and appreciated the risks arising therefrom. C., R. I. & P. v. Hughes 64 Okla. 74, 166 Pac. 411; Taylor, Bastrop & Houston Ry. Co. v. Taylor, supra. And within this rule it was correct to say that plaintiff assumed the risk of such secret defects as could not be discovered by ordinary observation and diligence on the part of defendant.

The approved way of stating the rule is that the servant assumes all the ordinary risks of his employment which are known to him, or which could have been known with the exercise of ordinary care to a person of reasonable prudence and diligence under like circumstances and that with reference to risks not naturally incident to the occupation, but which may arise out of the failure of the master to exercise due care in the performance of some duty owing by him to the servant, the rule is that the servant does not assume such risks until he becomes aware of such negligence of the master and of the risks arising therefrom, unless the defects and risks are so apparent and obvious that an ordinarily careful person would observe the one and appreciate the other. C., R. I. & P. Ry. Co. v. Hughes, and cases cited supra.

If the instruction failed to embrace any particular element of the defense which defendants desired submitted, it was their duty to present to the court a requested instruction, embodying the question which they desired submitted, and request that it be given; and where this is not done, and an instruction given is correct as far as it goes and is only defective in that it fails to embrace some element of the question submitted, the error, if any, will not work a reversal of the cause. First National Bank of Muskogee v. Tevis et al. 29 Okla. 714, 119 Pac. 218; C., R. I. & P. Ry. Co. v. Baroni, 32 Okla. 540, 122 Pac. 926; St. L. & S. F. Ry. Co. v. Crowell 33 Okla. 773 127 Pac. 1063; C., R. I. & P. R. Co. v. Radford, 36 Okla. 657, 129 Pac. 834; Chickasha Street Ry. Co. v. Wund 37 Okla. 582, 132 Pac. 1078; Livingston v. C., R. I. & P. Ry. Co., 41 Okla. 505, 139 Pac. 260; Great Western Coal & Coke Co. v. Malone, 39 Okla. 693, 136 Pac. 403; Seay et al. Plunkett, 44 Okla. 794, 145 Pac. 496.

Instruction No. 6, defining contributory negligence omitted to state that contributory negligence might consist in omitting to do an act which an ordinarily prudent person would have done under the same or similar circumstances. A servant is bound to exercise that degree of care which a reasonably prudent person would use in order to avoid being injured, or which might, under given circumstances, be reasonably expected of an ordinarily prudent person, and a servant is not in the exercise of ordinary care unless at each stage in the progress of his work he makes effective use of his bodily and mental faculties and observes, as definitely as is reasonably possible under the circumstances, the condition of the instrumentality by which his safety may be effected, and the results of their operation by himself or others in so far as that operation may tend to subject him to danger. 3 Labatt, Master & Servant, 3413. A correct definition of contributory negligence covers both acts of omission and commission, either of which may be negligent accordingly as it may be determined whether a reasonably prudent person would or would not do the act complained of and which contributed to the injury. However, there is no contention made that plaintiff omitted to do that which a reasonably prudent person would have done under the circumstances, and neither was there any request made for the court to submit this element of contributory negligence to the jury.

Instruction No. 9 did not make the test, in determining whether plaintiff was guilty of contributory negligence whether he believed an ordinarily prudent person would have jumped, but left it to the jury to determine whether under all the circumstances disclosed by the evidence, an ordinarily prudent person would have acted as plaintiff did in order to avoid or lessen injury to himself. Neither was said instruction an invasion of the province of the jury, in that it expressed any opinion upon the weight of the evidence; the jury being instructed that they were the sole judges of the weight of the evidence and the credibility of the witnesses.

Paragraph 11 did not leave out of consideration the allegation that the derailment was caused by a broken flange, as this was properly included within the language authorizing a verdict in plaintiff's favor if the jury found that his injuries were directly and proximately caused by the negligence of defendants in failing to use ordinary care in providing safe and suitable tools, appliances and equipment with which to do his work. Said paragraph authorized

a verdict in plaintiff's favor if the jury found that his injuries were caused by the failure of defendants to use ordinary care in furnishing to the plaintiff a reasonably safe fellow servant with which to work, or the negligence and carelessness of said fellow servant which caused the derailment or wreck.

There was no issue in the pleadings or the evidence as to want of care upon the part of defendants to furnish plaintiff a reasonably safe fellow servant with which to work, but we will not reverse the cause for the giving of this instruction, because it could not possibly have operated to the prejudice of defendants.

There is an abundance of evidence to show that the roadbed and tracks were defective in the particulars claimed, and that the train was being run at a high and reckless rate of speed over such track, and that these conditions were known to the defendants and to the engineer who operated the engine that was pulling the train at the time. The giving of this abstract proposition of law will not warrant a reversal of the judgment unless it is apparent that such instruction misled the jury. Chickasaw Compress Co. v. Bow, supra; Pearson v. Yoder, 39 Okla. 105, 134 Pac. 421 48 L. R. A. (N. S.) 334, Ann. Cas. 1916A, 62; Ponca City Ice Co. v. Robertson supra.

We do not think the language quoted had the effect of misleading the jury. Had it not been contained in the paragraph under consideration, we believe the verdict of the jury would still have been in plaintiff's favor. This paragraph is not subject to the criticism that it permitted a recovery excluding a diminution of the damages suffered in proportion to the degree that plaintiff's own negligence contributed to his injuries. The rule in this regard was contained in paragraph No. 15, to which no exceptions are urged. Neither did this paragraph assume as a fact established by the evidence that the engineer was negligent in the operation of his engine at a high and reckless rate of speed.

Paragraph 25½ did not assume as a fact that the engineer had received orders with reference to the speed that he should maintain at the place where the derailment occurred, but this was submitted to the jury to be determined as a question of fact.

The instructions in this case are very voluminous. It appears that the court gave a number of requests by the defendants, and at the same time embodied his own ideas in other paragraphs but, notwithstanding this situation, the instructions are not so contradictory as to be confusing and

misleading. Taking them, as a whole, they state in a substantial manner the correct principle of law applicable to the facts proven, and, while they are subject to criticism because of their prolixity and because of the same proposition being stated in more than one paragraph, there is not sufficient error contained therein to warrant a reversal of the judgment; and, believing from the entire record that substantial justice has been done, the judgment is affirmed.

All the Justices concur, except BRETT and TISINGER, JJ., absent.